UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MARTY GREENE,
Plaintiff,

v. Case No.:

CITY OF TAMPA, FLORIDA,
Defendant.
______________________________________/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, MARTY GREENE ("Greene"), brings this action against Defendant, CITY OF TAMPA, FLORIDA ("City"), under 42 U.S.C. § 1983 to remedy his retaliatory termination for exercising his First Amendment right to speak as a citizen about alleged corruption, racial discrimination, misuse of public resources, and unsafe municipal operations. Greene took those concerns directly to the Tampa City Council. The City then used his public statements as grounds for terminating his employment. By characterizing his criticism of alleged governmental misconduct as an employment offense, the City wielded its disciplinary authority to punish the very speech that called its management into question. The Constitution does not permit a municipality to make an employee's livelihood the price of demanding public accountability. Greene seeks damages and equitable relief for that violation.

## JURISDICTION AND VENUE

1. This action arises under the First Amendment to the United States Constitution, applicable to the City through the Fourteenth Amendment, and 42 U.S.C. § 1983.
2. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3).
3. This Court has authority to grant appropriate declaratory relief under 28 U.S.C. §§ 2201 and 2202.
4. Venue is proper under 28 U.S.C. § 1391(b) because the City is located in this District and the events giving rise to this action occurred in Tampa, Hillsborough County, Florida.

## PARTIES

5. Greene is a natural person residing in Hillsborough County, Florida, and a former City employee.
6. The City is a municipal corporation organized under Florida law.
7. At all relevant times, the City operated the municipal department in which Greene worked and exercised governmental authority over his employment and discipline.
8. In taking the actions challenged in this Complaint, the City acted under color of state law.

## FACTUAL ALLEGATIONS

### Greene's employment and reports of misconduct

9. The City hired Greene on October 16, 2023, as a Technician I performing municipal road construction and paving work.
10. Greene's employment responsibilities involved roadwork and the operation of paving equipment. His ordinary responsibilities did not include investigating municipal corruption, conducting civil-rights oversight, auditing departmental expenditures, or making public presentations to the City Council concerning governmental misconduct.
11. During his employment, Greene raised concerns about conduct within the City's Mobility Department that he believed involved racial discrimination, misuse of public resources, abuse of supervisory authority, and unsafe working practices.
12. Greene reported that supervisor Michael Brown demanded payments of approximately \$50 to \$100 in connection with the assignment of overtime opportunities.
13. Greene also reported that Brown pressured him to provide a \$10,000 loan while occupying a supervisory position over him.
14. Greene raised concerns that supervisor Henry Cabellero had referred to Black employees as "monkeys."
15. Greene objected to the City's response to that reported conduct, including its imposition of a three-day suspension, and challenged what he perceived as racially unequal disciplinary practices.

16. Greene also raised concerns about alleged misuse of a City vehicle, employee time theft, unauthorized equipment purchases, inadequate crew staffing, and workers performing roadwork without necessary training or traffic-safety qualifications.

17. These reports concerned the integrity of municipal operations, the administration of public resources, the treatment of municipal employees, and the safety of public roadwork.

**<u>Greene's speech before the City Council</u>**

18. Beginning in May 2025, Greene appeared at multiple public meetings of the Tampa City Council to seek investigation and corrective action.

19. Greene made these presentations as a citizen addressing elected officials about the operation of City government, outside the ordinary responsibilities of his paving position.

20. Greene attended and spoke at each City Council meeting identified in this Complaint while off duty, on his own time, and away from his jobsite. His attendance and remarks were outside his assigned employment responsibilities, and he did not speak on behalf of the City.

21. On May 1, 2025, Greene addressed alleged racism within the department, Brown's request for a $10,000 loan, alleged employee time theft, and allegedly unauthorized equipment purchases. He called for an audit of the Mobility Department and described its administration as a "dog and pony show."

22. On June 5, 2025, Greene raised concerns about alleged FEMA-related violations, the handling of employee complaints, denied training, retaliation, and threats to his safety.

23. On June 26, 2025, Greene again addressed alleged racism, including the reported description of Black employees as "monkeys," and challenged the adequacy of the City's disciplinary response.

24. During that presentation, Greene compared conditions within the department to "Candy Land" in the film *Django Unchained* and described workers as being treated "like slaves." Those comparisons expressed his condemnation of perceived racial oppression and unequal treatment.

25. On July 17, 2025, Greene addressed alleged misuse of a City vehicle, inadequate staffing for municipal paving crews, racial discrimination, and fear of retaliation among employees who reported misconduct.

26. On July 31, 2025, Greene raised concerns about untrained workers, missing traffic-safety qualifications, occupational hazards, and threats of additional discipline if he continued submitting complaints.

27. On August 7, 2025, Greene publicly addressed alleged payments demanded for overtime assignments, pressure to provide Brown with a $10,000 loan, and other alleged abuses of supervisory authority.

28. In criticizing perceived racial discrimination, Greene also compared management conduct to the Ku Klux Klan.

29. Greene's references to slavery, racial oppression, and the Ku Klux Klan were part of his denunciation of alleged discriminatory governmental conduct. He used forceful language to demand accountability from public officials.

30. The public presentations identified above addressed concerns extending beyond Greene's individual employment circumstances, including alleged corruption in the allocation of overtime, discriminatory treatment of other employees, misuse of taxpayer-funded resources, and unsafe municipal operations.

31. Greene sought governmental investigation and corrective action through a public civic process. Addressing those subjects before the Council was neither an assigned work task nor a presentation made on the City's behalf.

32. Before the speech-related disciplinary proceedings challenged in this action, Greene had no prior disciplinary history with the City.

**The City's disciplinary response and termination**

33. City management learned of Greene's Council presentations.

34. The City investigated Greene's statements at Council meetings. The trial notebook prepared for his Civil Service Board appeal identifies an exhibit devoted specifically to the City's investigation of those comments.

35. As described in the September 24, 2026, demand letter submitted on Greene's behalf, the City's disciplinary grounds expressly included statements Greene made during his Council presentations.

36. The City treated Greene's public criticism, including his references to racism and racial oppression, as unprofessional, inappropriate, or discriminatory speech warranting employment discipline.
37. The City terminated Greene's employment in 2026.
38. Greene alleges that his protected Council speech was a substantial motivating factor in that termination.
39. The causal connection rests on the City's express use of the public statements as disciplinary grounds, rather than merely on the sequence of his speech and dismissal.
40. The City's stated objections to Greene's language supplied a means to punish the substance of his criticism: allegations that City supervisors engaged in corruption, tolerated racial discrimination, misused public resources, and administered municipal operations unsafely.
41. Greene alleges that the City's characterization of his public criticism as an employment offense was pretextual and that the City would not have terminated him absent his protected speech.
42. Greene made the Council presentations while off duty and on his own time. His presentations did not interrupt his assigned work or prevent him from performing his paving duties. Greene further alleges that the presentations did not materially impair municipal operations or create an operational disruption sufficient to justify his dismissal.
43. The City's disagreement with his accusations and objection to the forcefulness of his criticism did not supply an adequate governmental interest

outweighing the speech interests presented by his reports of alleged public misconduct.

**<u>Final municipal action</u>**

44. Greene appealed his termination to the City's Civil Service Board.

45. At its October 5, 2026, meeting, the Board unanimously voted to uphold the City's dismissal decision.

46. The City's written notification states that the Board accepted the City's exhibit binder, Greene's binder and exhibits, and other documents into evidence.

47. The materials prepared for Greene's appeal expressly presented his contention that the City had terminated him for protected speech before the City Council.

48. On information and belief, the Civil Service Board exercised the City's final municipal policymaking authority concerning the grounds for dismissal at issue in Greene's appeal.

49. On information and belief, the Board knowingly approved the use of Greene's identified Council statements as grounds for dismissal, thereby adopting the speech-based basis of the termination.

50. That allegation is based on the City's express reliance on the Council statements in its disciplinary case, the presentation of Greene's First Amendment objection in the appeal materials, the Board's acceptance of the parties' exhibits, and its decision to uphold the dismissal.

51. Greene challenges the City's adoption of the protected speech as a ground for termination, including its final approval of that ground through the Board's decision.

52. The City's adoption and maintenance of the speech-based dismissal caused Greene's loss of employment and the resulting economic and noneconomic injuries.

**COUNT I**
**RETALIATORY TERMINATION IN VIOLATION OF THE FIRST AMENDMENT**
**42 U.S.C. § 1983**
**Against the City of Tampa**

53. Greene incorporates paragraphs 5 through 52 as the factual allegations supporting this count.

54. The First Amendment protects qualifying speech by public employees acting as citizens on matters of public concern.

55. In *Carter v. City of Melbourne*, 731 F.3d 1161, 1168–70 (11th Cir. 2013), the Eleventh Circuit recognized that criticism of municipal leadership and advocacy concerning governmental operations can constitute citizen speech on matters of public concern, even when the employee has a personal interest in the changes advocated.

56. Greene's public statements identified in paragraphs 21 through 30 concerned alleged governmental corruption, racial discrimination, misuse of public resources, and unsafe municipal practices.

57. Greene made those statements as a citizen seeking oversight by elected officials, rather than pursuant to his ordinary job responsibilities.

58. The content, form, and context of those presentations established their public significance: Greene addressed elected officials at public meetings and requested investigation and correction of alleged misconduct affecting municipal workers, public resources, and public services.

59. Under the circumstances alleged, Greene's interest in speaking and the public's interest in receiving that information outweighed the City's legitimate interests in maintaining efficient municipal operations.

60. The City subjected Greene to an adverse employment action by terminating his employment.

61. The City knew of Greene's protected speech, investigated his Council comments, and used those comments as grounds for dismissal.

62. Greene's protected speech was a substantial motivating factor in his termination, and the City would not have terminated him in the absence of that speech.

63. Municipal liability under § 1983 requires an attributable municipal policy or final policymaking action. *Scala v. City of Winter Park*, 116 F.3d 1396, 1397–1403 (11th Cir. 1997).

64. As alleged in paragraphs 44 through 51, the City, acting through its authorized final policymaking body, knowingly adopted the use of Greene's protected Council statements as grounds for his dismissal.

65. That final municipal action was the moving force behind the deprivation of Greene's First Amendment rights.

66. By terminating Greene because of his protected public criticism, the City violated the First Amendment.

67. As a direct and proximate result, Greene suffered lost wages, lost employment benefits, lost employment opportunities, emotional distress, and injury to his professional standing, in amounts to be established at trial.

68. Greene continues to experience the economic consequences of the termination and seeks appropriate equitable relief restoring his employment and correcting the employment records resulting from the unconstitutional action.

69. Greene is entitled to nominal damages if a constitutional violation is established without proof of compensable injury.

70. Greene seeks reasonable attorney's fees and recoverable litigation expenses under 42 U.S.C. § 1988.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, MARTY GREENE, requests judgment against Defendant, CITY OF TAMPA, FLORIDA, awarding:

A. Compensatory damages for lost wages, benefits, and other proven economic losses caused by the unconstitutional termination, without duplicative recovery;

B. Compensatory damages for proven emotional distress and other legally recoverable noneconomic injuries;

C. Nominal damages where appropriate;

D. Reinstatement to his former position or a substantially equivalent position, together with appropriate restoration of seniority and employment benefits;

E. Appropriate equitable relief removing disciplinary findings and employment-record entries attributable to the protected speech adjudicated in this action;

F. Declaratory relief, to the extent appropriate in resolving the parties' continuing employment dispute;

G. Reasonable attorney's fees and recoverable litigation expenses under 42 U.S.C. § 1988;

H. Taxable costs and prejudgment interest where legally available;

I. Postjudgment interest as provided by law; and

J. Such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury on all issues so triable.

Respectfully submitted,

*/s/ Anthony F. Sabatini*
ANTHONY F. SABATINI, ESQ.
FL BAR No. 1018163
SABATINI LAW FIRM, P.A.
1601 E. 1ST AVENUE
MOUNT DORA, FL 32757
T: (352)-455-2928
anthony@sabatinilegal.com

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been furnished this 2nd day of November 2026, via email to all parties of record.

*/s/ Anthony F. Sabatini*
**Anthony F. Sabatini, ESQ.**